**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Minnesota Industrial Ventures, L.L.C.,

                Plaintiff,

v.

City of Roseville and
Roseville Twin Lakes L.L.C.,

                Defendants.

Civ. No. 05-2488 (RHK/JSM)

**MEMORANDUM OPINION AND ORDER**

John M. Magliery and Steven Johnson, Kennedy, Johnson, Gallagher L.L.C., New York, New York; David A. Orenstein and Joseph M. Sokolowski, Parsinen, Kaplan, Rosberg & Gotlieb P.A., Minneapolis, Minnesota, for Plaintiff.

Paul D. Reuvers and Jason J. Kuboushek, Iverson Reuvers L.L.C., Bloomington, Minnesota, for Defendant City of Roseville.

Matthew D. Spohn and Thomas H. Boyd, Winthrop & Weinstine P.A., Minneapolis, Minnesota, for Defendant Roseville Twin Lakes L.L.C.

**INTRODUCTION**

Plaintiff Minnesota Industrial Ventures, L.L.C. ("MIV") alleges claims against Defendants City of Roseville (the "City") and Roseville Twin Lakes, L.L.C. (the "Developer") for unlawful takings of real property in violation of the Fifth and Fourteenth Amendments to the United States Constitution, and Article 1, Section 13 of the Minnesota Constitution, and for tortious interference with prospective business advantage arising from a publicized redevelopment plan which includes business properties owned by MIV. This matter comes before the Court on both the City and the Developer's Motions to Dismiss

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the Court will grant the Motions.

## BACKGROUND

MIV, a company with headquarters located in Saint Louis Park, Minnesota, owns numerous parcels of real estate within the Twin Cities metropolitan area, including several properties at issue in this case (the "Properties"), which are located on Fairview Avenue and Terrace Drive in Roseville, Minnesota.[1] (Compl. ¶ 8.) The Properties contain office, industrial, and warehouse facilities subject to various commercial leases. (Id.) The Properties are subject to certain "loan documents" that prohibit a partial sale of any portion of the real estate. (Compl. ¶ 9.)

In 1996, the City adopted a plan to develop the Twin Lakes Area, a section of land within the City's boundaries, into a business park.[2] (Compl. ¶¶ 8, 11.) At the time of its adoption, the City's Twin Lakes Area redevelopment plan did not include the Properties. (Compl. ¶ 11.) MIV purchased the Properties in 1999, and two years later, in 2001, the City amended and expanded its Twin Lakes Area redevelopment plan to include the Properties, providing MIV with notice of a hearing concerning a proposal by the City Council to change the zoning ordinances for the area. (Compl. ¶ 11, 14.) The proposal

---

[1] The addresses of the Properties are: 2805-2823, 2825-2837, and 2770-2812 North Fairview Avenue; and 1620-1646, 1720-1746, and 1752-1758 Terrace Drive. (Compl. ¶ 13.)

[2] The City defines a "business park" as a hybrid of industrial, commercial, and residential zones. (Compl. ¶ 10.)

called for a change in the zoning ordinances for the real estate located in the Twin Lakes Area, including the Properties, from "industrial" to "B-6," which the City defined as "mixed-use business park." (Compl. ¶ 14.) MIV and other Twin Lakes Area property owners lobbied the City to retain the existing zoning. (Compl. ¶ 15.) The re-zoning proposal was defeated by a unanimous vote of the City Council on October 21, 2002. (Compl. ¶ 16.)

In November 2003, the City approved a Twin Lakes Area redevelopment plan proposed by the Developer[3] and began contract negotiations to determine the parameters of the project. (Compl. ¶ 20.) The negotiations continued until January 2005, when the City adopted the Developer's detailed plan for the first phase of redevelopment in the Twin Lakes Area (the "Phase I Plan"), which included a portion of the Properties owned by MIV. (Compl. ¶ 23.) The Phase I Plan called for development of 80 acres west of Fairview Avenue, which would contain 730 residential units and space for offices, retail stores, and restaurants. (Compl. ¶ 24.) At a public meeting following the City's adoption of the Phase I Plan, the City Council discussed a proposal that would authorize the Developer to acquire properties in the Phase I Plan area through market acquisition, and if this proved to be

---

[3] Initially, the City rejected Twin Lakes Area redevelopment proposals submitted by Roseville Properties Management, Inc. and Ryan Companies. (Compl. ¶¶ 17, 19.) In November 2003, the City adopted a plan proposed by Rottlund Companies. (Compl. ¶ 20.) In 2005, the other two developers joined Rottlund in the Twin Lakes Area redevelopment project and formed a new entity, Defendant Roseville Twin Lakes, L.L.C. (Compl. ¶ 25.) For simplicity, the Court will refer to Defendant Roseville Twin Lakes, L.L.C. as the "Developer" throughout this Order, which refers to Rottlund Companies until 2005, and thereinafter refers collectively to all three companies forming Roseville Twin Lakes L.L.C.

impossible, the Developer could then request the City to exercise the power of eminent domain to purchase the remaining properties at fair market value. (Compl. ¶ 26.) The proposal gave responsibility to the Developer for the composition of the development in the Twin Lakes Area, including locating potential buyers and financing possible condemnation proceedings. (Compl. ¶¶ 26-27.)

MIV objected to its inclusion in the Twin Lakes Area redevelopment plan and the Phase I Plan by letters dated May 18, 2005, and June 18, 2005. (Compl. ¶ 28.) Despite these objections, the City Council voted to include the Properties within the Twin Lakes Area redevelopment plan on June 20, 2005, and authorized the use of its eminent domain powers to acquire properties within the Twin Lakes Area that could not be purchased on the market. (Compl. ¶ 29.)

On September 9, 2005, the City and the Developer entered into a Contract for Private Redevelopment (the "Contract), covering all aspects of the Phase I Plan. (Compl. ¶ 30.) The Contract provided that if the acquisition of properties involved in the Phase I Plan "would render the entire [p]roject . . . [f]inancially [u]nfeasible . . . and if both Parties agree that the elimination of such [p]arcel will not substantially impair the integrity of the [p]roject, the Parties will use their best efforts to reach agreement as to whether changes to the [c]oncept [p]lan can be made to accommodate the elimination of such [p]arcel or [p]arcels." (Compl. ¶ 30.) The Phase I Plan includes 6.12 acres of the Properties owned by MIV. (Compl. ¶ 32.) Although the Contract requires the sole use of the Developer's private funds to acquire and develop the real estate included in the Twin Lakes Area

redevelopment plan, the City would benefit from development of the Phase I Plan "if the rate of return exceeds 12.5%." (Compl. ¶ 31.)

On June 14, 2005, the Developer made a non-binding offer to MIV to purchase a portion of the Properties at $21.00 a square foot, for a total purchase price of approximately $5,600,000. (Compl. ¶ 33.) The offer included a $10,000 deposit that was refundable if the City failed to finally approve the redevelopment or the Developer terminated the purchase during the due diligence period of 150 days. (Compl. ¶ 33.) Believing that the offer was substantially less than the current market value of the Properties, the offer was rejected by MIV. (Compl. ¶ 34.)

Since the time that the City and the Developer decided to include the Properties in the Twin Lakes Area redevelopment plan, MIV alleges that its ability to market the Properties has been materially impaired by what it terms a "cloud of condemnation." (Compl. ¶¶ 36-37.) MIV further alleges that the City and the Developer plan to acquire the Properties through eminent domain proceedings after their fair market value has declined due to the uncertainty created for potential tenants and buyers of the Properties. (Compl. ¶ 37.)

On October 26, 2005, MIV commenced this action against the City and the Developer. MIV alleges claims against the City for the taking of real property in violation of the Fifth and Fourteenth Amendments to the United States Constitution, and Article 1, Section 13 of the Minnesota Constitution. (Compl. ¶¶ 38-55.) MIV also alleges a claim against the City and the Developer for tortious interference with prospective business

advantage. (Compl. ¶¶ 56-60.) Both the City and the Developer now move to dismiss MIV's claims.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may move a court to dismiss a federal court action for "lack of jurisdiction over the subject matter." Such a motion may challenge the sufficiency of the pleading on its face or the factual truthfulness of its averments. See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). "Jurisdictional issues, whether they involve questions of law or fact, are for the court to decide." Faibisch v. University of Minn., 304 F.3d 797, 801 (8th Cir. 2002). "[T]he trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn, 918 F.2d at 730. The plaintiff bears the burden of proving that jurisdiction does in fact exist. Id.

Under Federal Rule of Civil Procedure 12(b)(6), the Court looks to factual allegations in the complaint. Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989). All factual allegations must be accepted as true, and every reasonable inference must be made in favor of the plaintiff. Fed. R. Civ. P. 12(b)(6); Midwestern Mach., Inc. v. Northwest Airlines, Inc., 167 F.3d 439, 441 (8th Cir. 1999); Carney v. Houston, 33 F.3d 893, 894 (8th Cir. 1994). The Court will not consider conclusory allegations or "blindly accept legal conclusions drawn by the pleader of the facts." Kaylor v. Fields, 661 F.2d 1177, 1182 (8th Cir. 1981); Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). In addition to the complaint, the Court may also consider "materials

embraced by the pleadings and materials that are part of the public record." In re K-tel Int'l Inc. Sec. Litig., 300 F.3d 881, 889 (8th Cir. 2002) (citations and internal quotations omitted).  A complaint should not be dismissed for failure to state a claim "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## ANALYSIS

### I.  Takings Claims

MIV asserts claims against the City for the taking of real property in violation of the United States and Minnesota Constitutions.  (Compl. ¶¶ 44-55.)  MIV claims that "the impending cloud of condemnation created by the City has radically curtailed [its] ability to derive income from the [Properties]. . . ."  (Compl. ¶ 45.)  Therefore, MIV alleges that "the City is depriving [it] of the economic benefit associated with ownership of the [Properties], which constitutes a temporary taking for which MIV is entitled to just compensation."  (Compl. ¶¶ 48, 54.)

Under both the Fifth Amendment to the United States Constitution and Article 1, Section 13 of the Minnesota Constitution, "private property" shall not be taken "for public use without just compensation."  To establish a constitutional takings claim, "a claimant with a recognized property interest must show that its interest was 'taken.'"  Skip Kirchdorfer, Inc. v. United States, 6 F.3d 1573, 1582 (Fed. Cir. 1993) (citing Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 123 (1978)).  The present case involves allegations of a "temporary taking," which "result[s] from a deliberate decision to

appropriate certain property for public use for a limited period of time." Williamson v. County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 203-04 (1985). In some situations, such temporary harms are compensable under the Fifth Amendment. Id. at 204.

In the present case, the City argues that MIV's takings claims are not ripe for adjudication because MIV has not exhausted state compensation procedures as required by Williamson, 473 U.S. at 195, and applied in Rockler v. Minneapolis Community Development Agency, 866 F. Supp. 415 (D. Minn. 1994) (Davis, J.). (City Mem. in Supp. at 7-9.) MIV counters that "the City has admitted that it would be futile to force MIV to pursue an inverse condemnation claim in state court before initiating its present claim for [a] temporary taking under the United States Constitution." (Mem. in Opp'n at 13.)

In Williamson, the Supreme Court held that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and has been denied just compensation." 473 U.S. at 195; Kottschade v. City of Rochester, 319 F.3d 1038, 1040 (8th Cir. 2003) ("Until [the plaintiff] has exhausted his state court remedies, his takings claim may not be brought in federal court"). In Minnesota, a plaintiff may seek compensation for a taking through an inverse condemnation action. See Bailey v. United States Army Corps of Eng'rs, 2002 WL 31728947, at *11 (D. Minn. Nov. 21, 2002) (Kyle, J.); Kottschade v. City of Rochester, 2002 WL 91641, at *3 (D. Minn. Jan. 22, 2002) (Montgomery, J.), aff'd Kottschade, 319 F.3d at 1038; see Wilson v. Ramacher, 352 N.W.2d 389, 394 (Minn. 1984) (noting availability of an inverse condemnation action).

The holding from Williamson was applied in Rockler, where property owners sued the City of Minneapolis alleging the existence of a temporary taking in violation of the federal and state Constitutions. Rockler, 866 F. Supp. at 416. The property owners claimed that the city's proposed redevelopment project had created a "cloud of condemnation" over their property located within the development area, denying them economic benefits associated with ownership of the property. Id. at 416-17. The Court dismissed the federal and state takings claims on ripeness grounds because the property owners had not exhausted their state remedy, the filing of an inverse condemnation claim in state court, before filing the claims in federal court. Id. at 418.

In addition to Rockler, the circumstances of the present case are nearly identical to this Court's recent decision in Koscielski v. City of Minneapolis, 393 F. Supp. 2d 811 (D. Minn. 2005) (Kyle, J.), aff'd 435 F.3d 898 (8th Cir. 2006). In Koscielski, several plaintiffs alleged takings claims against the city under the federal and state Constitutions for enforcement of a local zoning ordinance which deprived the plaintiffs of a federal firearms license. 393 F. Supp. 2d at 817. The city argued that the takings claims were not ripe for adjudication because the plaintiffs had not exhausted state compensation procedures. Id. This Court recognized the existence of the inverse condemnation procedure in Minnesota, and concluded that until the plaintiffs had exhausted the procedure as required by Williamson, their takings claim was not ripe for adjudication. Id. at 818. The Eighth Circuit affirmed this Court's decision by holding that "failure to follow such a procedure or have the Minnesota courts rule an inverse condemnation action may not be

9

brought makes a takings claim not ripe for review by the federal courts." Koscielski, 435 F.3d at 903.

Like Rockler and Koscielski, in this case the City argues that MIV's takings claims are not ripe for adjudication because "MIV has not gone through an inverse condemnation proceeding or exhausted its state remedies." (City Mem. in Supp. at 9.) The Court agrees. The Complaint is devoid of any factual allegations showing that MIV has attempted to acquire compensation through an inverse condemnation proceeding in state court. Furthermore, at oral argument, counsel for MIV conceded that MIV has not filed an inverse condemnation claim against the City and the Developer. Therefore, until MIV has exhausted the State's compensation procedure as required by Williamson and applied in Koscielski and Rockler, its takings claims are not ripe for adjudication. Accordingly, the Court will dismiss such claims.[4]

## II.   Tortious Interference with Prospective Business Advantage

MIV also alleges a claim for tortious interference with prospective business advantage against both the City and the Developer. MIV contends that the Defendants "intentionally and through improper means caused prospective tenants or prospective

---

[4] The Court's dismissal of MIV's takings claims under the federal and state Constitutions on ripeness grounds also eliminates its request for injunctive relief. Although MIV sets out its request for an injunction as a separate cause of action in the Complaint (see Compl. ¶¶ 38-43), the request depends on the viability of MIV's takings claims; an injunction is a remedy, not a cause of action. See e.g., Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 211 n.1 (2002) ("an injunction is inherently an equitable remedy. . .").

buyers to withdraw their interest in MIV's Properties" by "deliberately publicizing" the inclusion of the Properties in the Twin Lakes Area redevelopment plan and announcing that "the use being made of the [Properties] by MIV was not the highest and best use." (Compl. ¶¶ 58-59.)

Pursuant to 28 U.S.C. § 1367(c)(3), this Court may, *sua sponte,* decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction." See e.g., Porter v. Williams, 436 F.3d 917, 920 (8th Cir. 2006) ("once the district court granted partial summary judgment to [the defendants], it had the discretion either to remand the remaining state-law claims or to keep them in federal court"); Rockler, 866 F. Supp. at 420 ("Given the fact that Plaintiffs' taking claims must first be resolved in state court, this court will decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3)."). Because the Court is dismissing all claims over which it had original jurisdiction, it declines to exercise supplemental jurisdiction over MIV's state-law claim for tortious interference.

## CONCLUSION

Based on the foregoing, and all of the files, records and proceedings herein, it is **ORDERED** that Defendants' Motions to Dismiss (Doc. Nos. 8 and 10) are **GRANTED** with respect to Plaintiff's takings claims (Doc. No. 1, Causes of Action 2 and 3), and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim (Doc. No. 1, Cause of Action 4) pursuant to 28 U.S.C. § 1367(c)(3).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 24, 2006                                   s/Richard H. Kyle
                                                        RICHARD H. KYLE
                                                        United States District Judge